# Illinois Official Reports

## Appellate Court

*In re Marriage of Sheth*, 2015 IL App (1st) 132611

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF ANITA SHETH, Petitioner-Appellee, and SUSHIL SHETH, Respondent-Appellant. |
| | |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-2611 |
| | |
| Opinion filed | August 22, 2014 |
| Opinion withdrawn | February 9, 2015 |
| Modified<br>opinion filed | February 13, 2015 |
| | |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Respondent's appeal from the denial of his motion to reconsider an order in respondent's marriage dissolution proceedings changing the custodian of four bank accounts belonging to respondent's children was dismissed for lack of jurisdiction where the record showed that his notice of appeal was filed more than 30 days after the denial of the motion to reconsider, and respondent did not submit a "Certificate of Service" sworn to before an authorized person that could be considered an affidavit for purposes of showing that the notice was placed in the mail of the prison in which he was incarcerated at the time of mailing within the 30-day time limit in compliance with the requirements of Supreme Court Rule 12(b)(3). |
| | |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-D-007370; the Hon. Leida Gonzalez-Santiago, Judge, presiding. |
| | |
| Judgment | Dismissed for lack of jurisdiction. |

Counsel on
Appeal

No brief filed for appellant.

Ariel Weissberg, of Weissberg & Associates, Ltd., of Chicago, for appellee.

Panel

JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justice Palmer and Justice McBride[1] concurred in the judgment and opinion.

## OPINION

The instant appeal arises from a trial court order changing the custodian of four bank accounts belonging to respondent Sushil Sheth's children; prior to the order, Sushil served as custodian. Sushil claims he was denied due process, because he was not afforded an opportunity to timely respond to the motion of his ex-wife, petitioner Anita Sheth, to change the custodian, nor was he afforded an opportunity to argue his position before the trial court denied his motion to reconsider. By contrast, Anita claims that Sushil has no standing to bring the instant appeal and that his appeal is barred by *res judicata*. For the reasons that follow, we dismiss the appeal for lack of jurisdiction.

### BACKGROUND

The following facts, up to the filing of the petition for dissolution of marriage, were stipulated to by the parties before the trial court on August 16, 2012. Anita and Sushil were married on November 23, 1991, and had two children, S.S. and R.S., born October 27, 1994, and March 10, 1996. Sushil is a physician, specializing in internal medicine and cardiology, and had hospital privileges at four hospitals in the Chicago area. Sushil had a business relationship with another doctor, Lokesh Chandra, and Sushil would treat Chandra's patients when Chandra was unavailable. Beginning in 2006, Chandra began investigating Sushil's billing practices after receiving reports from patients that Sushil had billed Medicare and other insurance carriers for treatments that the patients had not received; Chandra discovered that Sushil had been fraudulently billing since 2002. Chandra approached government officials and informed them of his discovery.

On April 19, 2006, a complaint was filed against Sushil in federal district court, in a case captioned United States *ex rel.* Chandra v. Sheth, No. 06 CV 02191 (N.D. Ill.). The complaint alleged violations of the Federal Civil False Claims Act (31 U.S.C. § 3729 *et seq.* (2000)) and

[1]As Justice Taylor is no longer sitting in the Appellate Court, Justice McBride replaces him as a member of the panel in the instant case.

- 2 -

the Illinois Whistleblower Reward and Protection Act (740 ILCS 175/1-8 (West 2004)), and sought a civil judgment against Sushil in the amount of $30 million.[2]

¶ 5 Two years later, on January 28, 2009, Sushil was also criminally charged by information with healthcare fraud in federal court, in a case captioned United States v. Sheth, No. 09 CR 069 (N.D. Ill.). The information charged that Sushil was a cardiologist who submitted claims to Medicare and other health benefit programs for services that he did not provide, to the extent of approximately $13.4 million, and sought forfeiture of Sushil's real and personal property in addition to seeking a conviction. On August 19, 2009, Sushil entered a plea agreement in the criminal case, in which he agreed to enter a voluntary plea of guilty to the healthcare fraud, and further agreed to the entry of a forfeiture judgment. On August 10, 2010, the federal court sentenced Sushil to 60 months' incarceration and entered a judgment for restitution in the amount of $13 million.[3]

¶ 6 On August 6, 2009, approximately six months after Sushil was criminally charged, Anita filed a petition for dissolution of marriage, citing irreconcilable differences. On October 22, 2010, Sushil, through attorney Laurel Black Rector, filed an appearance in the dissolution of marriage action. Subsequently, the record contains a motion slip completed by Rector and a "motion call receipt," which list a "motion to withdraw" as set for December 28, 2010. However, the record does not indicate that this motion was ever heard, and the sole court order entered on December 28, 2010, does not reference the motion to withdraw. Additionally, Rector continued to be involved with Sushil's case, further indicating that the motion was never granted.

¶ 7 On October 4, 2012, the trial court entered a judgment for dissolution of the parties' marriage. One of the conclusions of law contained in the judgment concerned four custodial bank accounts established for the parties' children:

"1.6. Upon the entry of this Judgment of Dissolution, all funds in the Custodial Accounts are owned by [the children], as follows: (a) owned by [S.S., the daughter]–a Roth individual retirement account at BMO Harris, with account ending 3290 for [S.S.] with the approximate amount of $8,147.41; (b) owned by [R.S., the son]–a Roth individual retirement account at BMO Harris, with account ending 3308 for [R.S.] with the approximate amount of $8,147.41; (c) owned by [S.S.]–an account at Wells Fargo Bank, with account ending 4080 for [S.S.] with the approximate amount of $34,581.70; and (d) owned by [R.S.]–an account at Wells Fargo Bank, with account ending 4098 for [R.S.] with the approximate amount of $34,581.82. These funds shall be used for the payment of post high school educational expenses, and for no other purpose. These funds are free and clear of any right, title or interest of Sushil and Anita. A separate Order shall be entered by this Court directing BMO Harris and Wells Fargo Bank to tender the funds in the Custodial Accounts as provided in this paragraph 1.6 of this Order, and these financial institutions shall comply with the provisions of this paragraph 1.6."

---

[2]The complaint does not appear in the record on appeal. However, according to the trial court's judgment for dissolution of marriage, a judgment was entered against Sushil in the amount of $20 million on September 28, 2010.

[3]Anita and the children later filed a petition asserting rights in a number of the assets that Sushil had forfeited, and their rights were settled by the trial court on June 22, 2011.

¶ 8    On November 5, 2012, Sushil filed a motion to reconsider the judgment for dissolution of marriage, in which he challenged an earlier court order granting Anita's motion to quash certain subpoenas sent to a number of financial institutions prior to trial. Sushil's motion did not challenge the trial court's conclusion concerning the custodial accounts.

¶ 9    On December 5, 2012, Sushil filed a *pro se* "Motion to Remove Laurel Black Rector as Attorney for Respondent." Sushil claimed that he did not receive a copy of the trial court's judgment for dissolution of marriage from Rector until October 29, 2012, and that he had had no communication with Rector since approximately September 24, 2012, at which time Rector had informed Sushil that she would file a "Motion for Reconsideration" with the trial court. Therefore, he asked the court to "dismiss Laurel Black Rector as his counsel."

¶ 10   On January 29, 2013, Sushil filed a *pro se* letter addressed to the "Circuit Clerk of Cook County," in which Sushil claimed that he had contacted the clerk's office via telephone after receiving no response to his mailed motion and had verified that his motion to remove Rector had not been entered into the circuit court's computer system. Sushil attached another copy of the motion and asked for it to be immediately filed if it had in fact not been previously filed. There is nothing in the record to indicate that Sushil's motion to remove Rector as his attorney was ever acted upon.

¶ 11   On May 6, 2013, Anita filed a "Motion for Entry of Order Regarding Custodial Funds"; the service list included both Rector and Sushil, who was sent the motion by first class certified mail, return receipt requested. In the motion, Anita stated:

> "Through this Motion, and pursuant to the Judgment, Petitioner is requesting the turnover of the funds in the Custodial Accounts from Respondent to Sandip Chandarana, Esq., who will act as the custodian of the funds in the Custodial Accounts for [R.S.] and [S.S.] Mr. Chandarana is Petitioner's brother and an attorney. Sandip Chandarana will hold the funds in a newly-created custodial account, and he will maintain and disburse the funds in the newly-created custodial account on behalf of [the children]."

¶ 12   On May 13, 2013,[4] Sushil mailed a *pro se* response to Anita's motion, asking for a continuance in light of his pending motion to remove his attorney. Sushil also expressed "concerns" about Anita's motion, noting that the appointment of Anita's brother as custodian should be "carefully evaluated," because he was not a practicing attorney and had no experience serving in a fiduciary capacity to others, nor was there a statement in the motion that the brother had the time or inclination to accept the appointment as custodian. Additionally, Sushil noted that there was no accounting mechanism described in the motion to reflect the purposes for which the funds should be expended. As an alternative to Anita's brother being named as custodian, Sushil suggested that the trust departments of BMO Harris and Wells Fargo be named as trustee of the accounts. Finally, Sushil argued that Anita's motion "does not serve any purpose," since "[t]he custodial bank accounts described in Petitioner's Motion are already in the Children's names. No one else has any ownership in these accounts. Initially, Respondent set up these accounts in his children's names for the sole and exclusive benefit of his children. Respondent has no ability to access the funds in these

---

[4]Sushil's response was file-stamped on May 20, 2013, but it was mailed and faxed to the court and Anita's counsel on May 13, 2013, and, according to Anita's counsel, was brought to the court's attention prior to its ruling on Anita's motion.

accounts for himself since he does not have any ownership in these accounts. *** Specifically, the question is how are the children benefited by any modification in these accounts which are already under their ownership[?]"

¶ 13    On May 15, 2013, with "due and proper notice having been given to all parties in interest," the trial court granted Anita's motion and ordered: "BMO Harris, N.A., Wells Fargo Bank and Sushil Sheth shall immediately transfer to Sandip Chandarana all right, title and interest that they have" in the custodial accounts. The court further ordered that Chandarana was authorized to maintain and disburse funds contained in the newly created custodial accounts to fund the children's educational expenses.

¶ 14    On June 4, 2013,[5] Sushil mailed a motion for reconsideration of the order granting Anita's motion for entry of an order regarding the custodial funds. The motion claimed that Anita's motion regarding the custodial funds had been sent to Sushil at the federal correctional center through first class mail, and not through the federal prison's legal mail procedures, which delayed receipt of the motion until May 9, 2013. Upon receipt of the motion, Sushil prepared a response and sought a continuance, as he had been "abandoned" by Rector, his attorney, and a motion to remove her was pending before the trial court. On May 13, 2013, the earliest day that Sushil could send outgoing mail after receiving the motion, Sushil mailed his response to the clerk's office and to Anita's counsel. Additionally, since there would not be enough time for the response to arrive through mail in time for the May 15 hearing, Sushil faxed copies of the response to the clerk's office and to Anita's counsel; a note attached to the copy sent to Anita's counsel stated that "you cannot present argument before [the court] without addressing my [enclosed] Response. I recommend, as an Office of the Court, you obtain a Continuance tomorrow, as I am entitled Due Process of Law." Sushil confirmed with the clerk's office that the fax had been received and had been brought to the attention of the trial court.

¶ 15    On June 14, 2013, Anita filed a response to Sushil's motion to reconsider. In her response, Anita argued that Sushil had "no right to object to the concept or substance" of Anita's motion concerning the custodial accounts, since Sushil admitted that he did not own the funds and that they were solely owned by the children; Anita also noted that turnover of the funds in the custodial accounts had been ordered in the judgment for dissolution of marriage and claimed that the separate order was only the procedural step to effectuate this mandated turnover. Anita further stated that prior to the hearing on her motion, Anita's counsel informed the court that Sushil had filed a response and showed a copy of Sushil's response to the court.

¶ 16    On June 20, 2013, the date set for hearing on Sushil's motion to reconsider,[6] the motion was entered and continued to June 28, 2013. On June 28, the trial court denied Sushil's motion, finding that paragraph 1.6 of the judgment for dissolution of marriage stated "that the type of order entered on May 15, 2013[,] *shall* be entered" (emphasis in original), and that the May 15, 2013, order "was a mandatory execution" of the judgment for dissolution of marriage.

¶ 17    Sushil filed a *pro se* notice of appeal, challenging the trial court's order concerning the custodial accounts and its denial of his motion to reconsider. The notice of appeal is file-stamped with a date of August 13, 2013. However, the notice of appeal contains a "Certificate of Service" signed by Sushil and dated July 22, 2013, which states that Sushil

[5]The motion was file-stamped June 12, 2013.

[6]Although the motion for reconsideration was Sushil's motion, the record indicated that Anita's counsel set the matter for hearing on June 20, 2013.

certified that on July 22, 2013, he placed the notice of appeal in the federal correctional center's legal mailbox, with United States "First Class Certified Mail, Return Receipt Requested" postage affixed, addressed to the office of the circuit clerk of Cook County. The "Certificate of Service," which is also file-stamped with a date of August 13, 2013, is signed by Sushil but is not notarized. Immediately following the notice of appeal and "Certificate of Service," the record contains a document that appears to be a printout from the United States Postal Service website of the tracking information for the certified mail number listed on the "Certificate of Service." This printout states that the item was "Processed through USPS Sort Facility" in Indianapolis on July 24, 2013, and was "Delivered" in Chicago on July 29, 2013.

¶ 18                                     ANALYSIS

¶ 19        On appeal, Sushil claims that he was denied due process because he was not afforded an opportunity to timely respond to Anita's motion to change the custodian of the children's bank accounts, nor was he afforded an opportunity to argue his position before the trial court denied his motion to reconsider. By contrast, Anita claims that Sushil has no standing to bring the instant appeal and that his appeal is barred by *res judicata*. Before we consider either party's arguments, we must first determine whether we have jurisdiction to decide the instant case.

¶ 20        "A reviewing court must ascertain its jurisdiction before proceeding in a cause of action, regardless of whether either party has raised the issue." *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009). In the case at bar, although neither party discusses it, we must determine whether Sushil's notice of appeal was timely filed.

¶ 21        "The timely filing of a notice of appeal is both jurisdictional and mandatory." *Secura*, 232 Ill. 2d at 213. In the case at bar, the trial court denied Sushil's motion to reconsider on June 28, 2013. Thus, under Supreme Court Rule 303(a)(1), Sushil's notice of appeal was required to be filed by Monday, July 29, 2013. See Ill. S. Ct. R. 303(a)(1) (eff. May 30, 2008) (notice of appeal must be filed within 30 days after the entry of the order disposing of the last pending postjudgment motion directed against the judgment or order); 5 ILCS 70/1.11 (West 2012) (if the last day of a time period within which an act is to be done falls on a Saturday or Sunday, the Saturday or Sunday is not included in the computation). Sushil's notice of appeal was file-stamped with a date of August 13, 2013, more than 30 days after the denial of Sushil's motion to reconsider.

¶ 22        However, in the case at bar, Sushil mailed his notice of appeal. Supreme Court Rule 373 provides that, when filing by mail, "[i]f received after the due date, the time of mailing *** shall be deemed the time of filing." Ill. S. Ct. R. 373 (eff. Dec. 29, 2009). Here, the "Certificate of Service" attached to Sushil's notice of appeal states that the notice of appeal was placed in the legal mail system at the federal correctional center on July 22, 2013, within the 30-day period. Thus, Sushil must rely on the mailing rule in Rule 373 in order for his notice of appeal to be considered timely filed.

¶ 23        "[W]hile Rule 373 relaxes the requirement of timely filing where a party takes advantage of the convenience of mailing a document, a party can only take advantage of Rule 373 if it files proper proof of mailing as required by Rule 12(b)(3)" (*Secura*, 232 Ill. 2d at 216), and, indeed, Rule 373 expressly instructs that "[p]roof of mailing or delivery to a third-party commercial carrier shall be as provided in Rule 12(b)(3)" (Ill. S. Ct. R. 373 (eff. Dec. 29, 2009)). Rule 12(b)(3), in turn, provides in relevant part:

"(b) Manner of Proof. Service is provided:

* * *

(3) in case of service by mail or by delivery to a third-party commercial carrier, by certificate of the attorney, or affidavit of a person other than the attorney, who deposited the document in the mail or delivered the document to a third-party commercial carrier, stating the time and place of mailing or delivery, the complete address which appeared on the envelope or package, and the fact that proper postage or the delivery charge was prepaid[.]" Ill. S. Ct. R. 12(b)(3) (eff. Jan. 4, 2013).

¶ 24 In the case at bar, as noted, the notice of appeal contains a "Certificate of Service" signed by Sushil and dated July 22, 2013, which states that Sushil certified that on July 22, 2013, he placed the notice of appeal in the federal correctional center's legal mailbox, with United States "First Class Certified Mail, Return Receipt Requested" postage affixed, addressed to the office of the circuit clerk of Cook County. The "Certificate of Service," which is also file-stamped with a date of August 13, 2013, is signed by Sushil but is not notarized. Unfortunately for Sushil, we must find that the lack of notarization deprives the appellate court of jurisdiction.

¶ 25 Our supreme court considered the requirements of Rules 373 and 12(b)(3) in *Secura*, a case in which it determined that the plaintiff's notice of appeal was untimely due to failure to comply with the proof-of-mailing requirements of Rule 12(b)(3). There, the plaintiff mailed its notice of appeal to the trial court, which received the notice of appeal more than 30 days after the denial of the plaintiff's motion to reconsider. *Secura*, 232 Ill. 2d at 212. The appellate court initially granted the defendant's motion to dismiss for lack of jurisdiction, but later permitted the plaintiff to supplement the record with a cover letter dated within the 30-day period. *Secura*, 232 Ill. 2d at 212. However, no affidavit or certificate of service was filed. *Secura*, 232 Ill. 2d at 212.

¶ 26 Our supreme court determined that the cover letter submitted by the plaintiff was insufficient to prove mailing under Rule 12(b)(3). The court found that "[t]he cover letter does not provide 'proof of mailing' such that it is competent evidence under the rule. The letter does not contain an affidavit or a certificate and nothing is *certified* or *sworn to*." (Emphases in original.) *Secura*, 232 Ill. 2d at 216. The supreme court rejected the plaintiff's argument that the only element required by Rule 12(b)(3) that was missing was the time of the mailing, stating that "[t]his is not true, as Rule 12(b)(3) also requires a certificate or affidavit of mailing to the clerk." *Secura*, 232 Ill. 2d at 217.

¶ 27 The supreme court "emphasize[d] that the timely filing of an appeal is both jurisdictional and mandatory and the court must determine its own jurisdiction even if no party objects." *Secura*, 232 Ill. 2d at 217. It further rejected the reasoning applied by the appellate court in finding jurisdiction, stating that "[t]he issue in this case is not, as the appellate court believed, merely about a slight defect in the *form* of the notice. This is not a case where a certificate or an affidavit was submitted which had a typographical error, misspelling, or other inadvertent mistake. Rather, this case concerns [the plaintiff's] failure to prove by certificate or affidavit that it complied with the jurisdictional 30-day notice requirement in Rule 303." (Emphasis in original.) *Secura*, 232 Ill. 2d at 217. Finally, the court noted that "[h]armless-error analysis is not applicable here," since "[t]he appellate court's ruling may be well intentioned, but the

appellate court does not have the authority to excuse the filing requirements of the supreme court rules governing appeals." *Secura*, 232 Ill. 2d at 217-18.

¶ 28 In the case at bar, as in *Secura*, there was no certificate by an attorney or affidavit by a nonattorney as required by Rule 12(b)(3). While Sushil submitted a "Certificate of Service," that document was not notarized, meaning that it cannot be considered an affidavit. Our supreme court has stated that "Illinois courts have defined the term ['affidavit'] in consistent fashion for over 100 years," and that "an affidavit must be sworn to, and statements in a writing not sworn to before an authorized person cannot be considered affidavits." *Roth v. Illinois Farmers Insurance Co.*, 202 Ill. 2d 490, 493-94 (2002). Here, since Sushil's "Certificate of Service" was not sworn to before an authorized person, it cannot be considered an affidavit and, therefore, Sushil has not complied with Rule 12(b)(3)'s requirement that proof of mailing be in the form of a certificate by an attorney or an affidavit of a nonattorney.

¶ 29 We note that this exact issue was before this court in *People v. Tlatenchi*, 391 Ill. App. 3d 705 (2009), where we determined that a lack of notarization on a proof of service submitted by a nonattorney results in a failure to comply with Rule 12(b)(3) and deprives the appellate court of jurisdiction. There, we were presented with an incarcerated litigant who submitted a "proof of service" that followed the requirements of Rule 12(b)(3) but was not notarized. We noted that "Rule 12(b)(3) states that service by mail is proved by an '*affidavit* of a person other than the attorney, who deposited the paper in the mail, stating the time and place of mailing, the complete address which appeared on the envelope, and the fact that proper postage was prepaid.' " (Emphasis in original.) *Tlatenchi*, 391 Ill. App. 3d at 714 (quoting Ill. S. Ct. R. 12(b)(3) (eff. Nov. 15, 1992)). We further noted that "[o]ur supreme court has explained that an affidavit has been consistently defined for over 100 years as simply ' "a declaration, on oath, in writing, sworn to by a party before some person who has authority under the law to administer oaths" ' " (*Tlatenchi*, 391 Ill. App. 3d at 714 (quoting *Roth v. Illinois Farmers Insurance Co.*, 202 Ill. 2d 490, 493 (2002), quoting *Harris v. Lester*, 80 Ill. 307, 311 (1875))), and, "[t]hus, a writing that has not been sworn to before an authorized person does not constitute an affidavit" (*Tlatenchi*, 391 Ill. App. 3d at 714 (citing *Roth*, 202 Ill. 2d at 494)). Therefore, since the proof of service did not constitute an "affidavit" as required by Rule 12(b)(3), we found that the defendant could not use the date of mailing as the date of filing. *Tlatenchi*, 391 Ill. App. 3d at 716. We note that a petition for leave to appeal was filed with the supreme court in *Tlatenchi* and was denied. *People v. Tlatenchi*, 234 Ill. 2d 547 (2009) (table).

¶ 30 Given our supreme court's instruction in *Secura* and our earlier decision in *Tlatenchi*, we must find that while Sushil's "Certificate of Service" otherwise tracks the language of Rule 12(b)(3), it is not notarized and therefore does not constitute an "affidavit" as required by Rule 12(b)(3). While here, the record contains a document purporting to show the tracking information of the item that was mailed, we cannot read exceptions into the rule's clear requirement of an affidavit.[7] See *People v. Blalock*, 2012 IL App (4th) 110041, ¶ 11 (finding a

---

[7]Although it does not apply to Sushil in the instant case, we note that our supreme court has recently amended Rule 12. Rule 12(b)(4) provides service is proved "in case of service by mail by a *pro se* petitioner from a correctional institution, by affidavit, or by certification as provided in section 1-109 of the Code of Civil Procedure (735 ILCS 5/1-109 (West 2012)) of the person who deposited the document in the institutional mail, stating the time and place of deposit and the complete address to which the document was to be delivered." Ill. S. Ct. R. 12(b)(4) (eff. Sept. 19, 2014). Furthermore, we

postmark and notarized statement that the attached motion was true and correct insufficient to comply with the affidavit requirement); *Tlatenchi*, 391 Ill. App. 3d at 716 (finding that a verification under section 1-109 of the Code of Civil Procedure (735 ILCS 5/1-109 (West 2006)) was not a substitute for the requirement of an affidavit); *People v. Lugo*, 391 Ill. App. 3d 995, 1004 (2009) (finding a postmark an insufficient substitute for the affidavit requirement). But see *People v. Hansen*, 2011 IL App (2d) 081226, ¶ 14 (finding a postmark to be a sufficient proof of mailing). We also cannot find that the lack of notarization was harmless, as our supreme court has instructed that "[h]armless-error analysis is not applicable here," since "the appellate court does not have the authority to excuse the filing requirements of the supreme court rules governing appeals." *Secura*, 232 Ill. 2d at 217-18. Accordingly, we must find that Sushil's failure to comply with the proof of mailing requirements of Rule 12(b)(3) means that he cannot take advantage of Rule 373's mailing rule. Therefore, the date that the notice of appeal was received by the clerk's office serves as the date of filing which, in this case was August 13, 2013. As this date is more than 30 days after the June 28, 2013, denial of Sushil's motion to reconsider, Sushil's notice of appeal was untimely and we lack jurisdiction to consider his appeal.

¶ 31 Moreover, we also note that even if we had jurisdiction over his appeal, Sushil would not prevail, as we find his arguments meritless. Sushil's response to Anita's motion concerning the custodial accounts was presented to the trial court before it ruled on the order and, therefore, the trial court had the opportunity to consider the arguments made in the response. Further, there is nothing in the record to indicate that Anita's attorney in any way "manipulated the system" concerning the date of the hearing on the motion to reconsider, and, according to his brief, Sushil was present via telephone during the hearing. While Sushil argues that he was prevented from presenting his "key argument" during the hearing on the motion to reconsider, that "key argument" was merely that the court had made its decision to grant Anita's motion concerning the custodial accounts without having an opportunity to review Sushil's response, an argument that is belied by the record and Anita's counsel's representations before this court. Finally, while Sushil argues that he should have been granted continuances in light of his search for an attorney, a trial court's decision on a requested continuance is reviewed for an abuse of discretion (*Henderson-Smith & Associates, Inc. v. Nahamani Family Service Center, Inc.*, 323 Ill. App. 3d 15, 28 (2001)), and the record does not contain anything to indicate that the trial court here abused its discretion in ruling on Anita's motion and Sushil's motion to reconsider on the scheduled hearing dates.

¶ 32                                             CONCLUSION
¶ 33 Since Sushil's notice of appeal was filed more than 30 days after the denial of Sushil's motion to reconsider, we lack jurisdiction to consider Sushil's appeal.

¶ 34 Dismissed for lack of jurisdiction.

---

note that even if the amended rule did apply to Sushil's case, his "Certificate of Service" does not comply with section 1-109, so the result would remain the same.